**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――――――――

**UNITED STATES OF AMERICA,**

v. **5:07-CR-307**
**(FJS)**

**DAVID RANDALL,**

**Defendant.**

―――――――――――――――――――――――――――――――

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF THE UNITED**<br>**STATES ATTORNEY**<br>100 South Clinton Street<br>Syracuse, New York 13261-7198<br>Attorneys for the United States | **LISA M. FLETCHER, AUSA** |
| **OFFICE OF THE FEDERAL**<br>**PUBLIC DEFENDER**<br>The Clinton Exchange, 5th Floor<br>4 Clinton Square<br>Syracuse, New York 13202<br>Attorneys for Defendant | **MELISSA A. TUOHEY, AFPD** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Defendant's motion to suppress physical evidence that the police officers seized and statements that he made as a result of his alleged arrest on May 26, 2007. Defendant contends that officers of the Village of Whitesboro Police Department transformed a lawful investigatory stop into an unlawful arrest, thus invalidating any statements or consent that he gave during his detention. Moreover, Defendant argues that the Court should suppress his statements because the officers did not provide him his *Miranda* warnings. The

Government challenges Defendant's assertion that the officers executed an illegal arrest.  In order to resolve the factual issues surrounding this dispute, the Court conducted a suppression hearing on December 10, 2007, at the conclusion of which the Court reserved decision.  The following is the Court's written disposition of Defendant's motion.

## II. DISCUSSION

**A.    The testimony at the suppression hearing**

At the suppression hearing, Whitesboro Police Sergeant Jonathan Owens and Officer Jeffrey Buckley testified about the events leading up to Defendant's consent to the search of his home computer and data storage equipment.  The following recitation is the essence of their relevant testimony.

On May 26, 2007, at 2:15 p.m., Sergeant Owens received a call that an adult male was seen taking pictures of young boys at a church bazaar in the Village of Whitesboro, New York. Sergeant Owens responded to the call and, once on the scene, identified Defendant as matching the description he had been given.  Sergeant Owens was in uniform and driving a police vehicle when he motioned Defendant over to his car.  Defendant remained standing outside of the car, while Sergeant Owens engaged him in conversation from within the car.  Sergeant Owens asked Defendant whether he had been following small boys around and photographing them. Defendant first responded that he had not but then admitted that he had.  Without prompting, Defendant stated his name and produced his driver's license.  Sergeant Owens' further questioning revealed that Defendant was a level one registered sex offender.  Sergeant Owens then asked Defendant if he had a camera and, as Defendant pulled the camera out of his pocket,

Sergeant Owens asked to see the pictures stored on it.  Defendant cycled through the pictures on

the camera, holding the camera up for Sergeant Owens to see.  Sergeant Owens then asked to

inspect the camera himself so he could see the pictures more clearly.  He noted that, although the

camera contained pictures of little boys, those pictures were not illegal.  Defendant

acknowledged that he would download these pictures to his home computer to use for his

personal "gratification."  Sergeant Owens then returned the camera to Defendant.

After this exchange, Sergeant Owens asked whether Defendant would allow the police to

inspect his home computer.  Defendant told Sergeant Owens that he did not have illegal pictures

on his computer and was concerned that he would not get his computer equipment back after the

search.  Sergeant Owens explained the search procedure and told Defendant that he would get the

equipment back if the investigators did not find any incriminating material.  Sergeant Owens told

Defendant that he could sign a handwritten search and seizure consent form right there at the

bazaar or he could accompany him to the police station to sign a formal consent form.  Defendant

said that he would go with Sergeant Owens to the station as long as Sergeant Owens would bring

him back to his truck, which was parked near the bazaar.  Sergeant Owens advised Defendant

that he was not under arrest.

Once Defendant was in the car, Sergeant Owens pulled forward about forty to fifty yards

to get clear of pedestrian traffic.  Sergeant Owens paused at that point to obtain a telephone

number for counseling services for Defendant, who had earlier acknowledged that he had a

problem dealing with his sexual attraction to young boys.  When they arrived at the police station

at about 2:40 p.m., Sergeant Owens led Defendant to an interview room, where he remained

seated for ten to twelve minutes while Sergeant Owens attended to other police business.  The

door to the interview room remained open, Defendant was not restrained, and the police did not

confiscate his personal effects.  Defendant was not questioned while in the interview room.

At 3:00 p.m., Officer Buckley arrived at the police station to begin his shift and spoke

with Sergeant Owens, who explained Defendant's situation and emphasized that Defendant was

not under arrest.  Sergeant Owens introduced Defendant to Officer Buckley and, in Defendant's

presence, again told Officer Buckley that Defendant was not under arrest.   Once seated at Officer

Buckley's cubicle, Defendant said that he would consent to a search of his home computer

equipment.  Officer Buckley observed that Defendant was mainly concerned about getting

treatment for himself.  Defendant asked whether he should have an attorney present.  Officer

Buckley responded that it was Defendant's decision but he was not under arrest and was free to

leave at any time.  Defendant did not pursue the issue of consulting an attorney and, ultimately,

signed the consent form.

Neither the Government nor Defendant submitted any other evidence.  The Court finds

the testimony of both officers to be credible.


**B.      Admissibility of statements that Defendant made**

The requirement that law enforcement officers must apprise defendants of their rights

pursuant to the Fifth Amendment's privilege against self incrimination applies only to custodial

interrogations.  *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  The issue of custody under

*Miranda* is a two-part inquiry.  First, a court must determine whether a reasonable person under

the circumstances would have believed he was free to leave.  *See United States v. Newton*, 369

F.3d 659, 672 (2d Cir. 2004).  Only if this question is answered in the negative must the court

-4-

address the second question — whether there was a restraint on the defendant's movement

similar to that of a formal arrest.  *See id.* (citing *California v. Beheler*, 463 U.S. at 1125, 103 S.

Ct. 3517) (other citation omitted).

Factors indicating that a defendant was not free to leave include "the display of a weapon,

physical touching of the person by the officer and language or tone indicating a show of authority

that may compel compliance with the officer's request."  *United States v. Sugrim*, 732 F.2d 25,

28 (2d Cir. 1984) (citing [*United States v. Mendenhall*, 446 U.S. 544, 554 (1980)]).  Courts have

also found that a reasonable person would not feel free to leave where law enforcement officials

transported the defendant to a different location or asked the defendant to accompany them to the

police station.  *See United States v. Babwah*, 972 F.2d 30, 33-34 (2d Cir. 1992) (holding that the

defendant was arrested when police escorted him to a house they believed was connected with a

money-laundering operation); *United States v. Ceballos*, 812 F.2d 42, 47-48 (2d Cir. 1987)

(holding that the defendant was arrested when a secret service agent "flashed his badge and told

[him] that [he and his fellow agents] wished to take him to their office for questioning" and

denied the defendant's request to follow the agents in his own vehicle).  In such cases, the test is

"whether the [defendant's] consent to accompany the agents was in fact voluntary or was the

product of duress or coercion, express or implied, [which] is to be determined by the totality of

all the circumstances . . . ."  *United States v. Mendenhall*, 446 U.S. 544, 557 (1980) (citing

*Schneckloth v. Bustamonte*, 412 U.S., at 227, 93 S. Ct., at 2047).

Under the circumstances of this case, a reasonable person in Defendant's position would

have believed he was free to leave.  Neither Sergeant Owens nor Officer Buckley physically

touched, verbally threatened, or displayed force to coerce or command Defendant.  At the church

bazaar, Sergeant Owens questioned Defendant from his police car while Defendant remained standing outside.  The exchange was conversational, and Defendant freely answered Sergeant Owens' questions.  Defendant's argument that this exchange became an arrest once he got into Sergeant Owens' police car is unavailing.  While standing at the bazaar, Defendant agreed to a police inspection of his home computer equipment after Sergeant Owens explained the details of the search procedure.  Sergeant Owens gave Defendant the option to sign a handwritten consent on site or accompany him to the police station to sign a more formal consent form.  It should have been clear to Defendant at this stage that he did not have to go to the station; however, he chose to get into Sergeant Owens' car and go anyway.  Sergeant Owens did not restrain Defendant and repeatedly told him that he was not under arrest.[1]  Nor was Defendant restrained at the police station, where he waited in an interview room with the door open for just a few minutes.  When Sergeant Owens left Defendant with Officer Buckley, who subsequently presented Defendant with the consent form, he specifically told Officer Buckley in Defendant's presence that Defendant was not under arrest.

Traveling with a police officer in a confined space such as a police vehicle, without more, is not an arrest.  There was no restraint on Defendant's movement similar to a formal arrest.  He was not handcuffed or otherwise restrained, patted down, surrounded or physically guided by police, verbally directed to remain with the police, or enclosed within a confined space.  Although Defendant rode in the front seat of Sergeant Owens' patrol car to the police station, he volunteered to get in the vehicle and there is no indication that he was locked inside or directed not to leave.  Since Defendant, free from duress or coercion, voluntarily accompanied Sergeant

---

[1] In fact, Defendant rode in the front seat of the police vehicle.

Owens to the police station, there is no reason to suppose that he could not have exited the car or the police station at any time.  A reasonable person in Defendant's position would have felt free to leave.  Accordingly, the Court concludes that Defendant was not in custody; and, therefore, the officers were not required to read him *Miranda* warnings when he made his statements to the Whitesboro Police.


C.      **Legality of the search**

        Defendant contends that he did not voluntarily consent to the search of his computer equipment; and, therefore, he argues that the Court should suppress evidence obtained as a result of that search.  A defendant's waiver of his Fourth Amendment right to be free from unreasonable searches and seizures is invalid if it is tainted by an unlawful arrest.  *See Florida v. Royer*, 460 U.S. 491, 507-08 (1983).  An arrest, "the quintessential 'seizure of the person' under [ ] Fourth Amendment jurisprudence," occurs if a reasonable person under the circumstances would have believed that he was not free to leave.  *California v. Hodari D.*, 499 U.S. 621, 624, 627-28 (1991) (citations omitted).  Since the Court finds that a reasonable person in Defendant's position would have felt free to leave for Fifth Amendment purposes, the Court also concludes that the officers did not arrest Defendant within the meaning of the Fourth Amendment.  Therefore, Defendant's consent to the search of his computer equipment was voluntary.


### III. CONCLUSION

        After carefully considering the evidence adduced at the suppression hearing, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that Defendant's motion to suppress his statements and the evidence acquired as a result of his seized computer equipment is **DENIED**; and the Court further

ORDERS that the parties are to file their pretrial submissions on or before **January 17, 2008**; and the Court further

ORDERS that the final pretrial conference is scheduled for **January 24, 2008**, at **2:00 p.m.**; and the Court further

ORDERS that the trial of this matter will commence on **February 11, 2008**, at **9:30 a.m.**

**IT IS SO ORDERED.**

Dated: December 14, 2007
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-8-